UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80078-CR-SINGHAL/McCABE

UNITED STATES OF AMERICA

vs.

DEREK LEE KNOWLES,

           Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Defendant DEREK LEE KNOWLES ("Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Counts 1 and 2 of the Indictment, charging Defendant with Possession with Intent to Distribute a Controlled Substance (Count 1), in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(C) and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count 2).

### Elements

### Count 1

First:     Defendant knowingly possessed N,N-Dimethylpentylone;

Second:   Defendant intended to distribute N,N-Dimethylpentylone, a Schedule I controlled substance.

### Count 2

First:     the Defendant committed the drug-trafficking crime charged in Count 1 of the indictment; and

Second:   the Defendant knowingly possessed a firearm in furtherance of that crime, as charged in the indictment.

**Facts**

1.      On December 30, 2022, the Delray Beach Police Department executed a search warrant at KNOWLES' residence.  The search warrant was obtained based on law enforcement receiving information that narcotic sales were coming from the residence.  Therefore, law enforcement conducted two controlled buys of narcotics from KNOWLES, which led to the issuance of a search warrant.

2.      Immediately prior to executing the search warrant, law enforcement officers escorted KNOWLES and others outside the residence and searched KNOWLES.  Officers located a container with a red cap containing 3 grams of suspected crack cocaine.  The suspected crack cocaine field tested positive for cocaine.

3.      Thereafter, prior to searching the residence, law enforcement advised KNOWLES of his *Miranda* rights.  Post *Miranda*, KNOWLES advised officers that he uses the screened in front porch of the residence to sleep and keeps his belongings in that area.  KNOWLES further admitted that he had belongings in the back room of the residence.  When law enforcement questioned KNOWLES as to whether there were any illegal drugs or firearms in the residence that law enforcement should be aware of prior to the search, KNOWLES admitted there were drugs, including "caps" on the front porch of the residence.  KNOWLES admitted that he sells narcotics to provide for himself and his children.  He does it to "get by" because he has "no job." KNOWLES denied knowledge of firearms.

4.      While searching the foyer area of the residence, officers located a black backpack hanging from an electric bicycle containing a firearm.  Officers have prior knowledge of KNOWLES riding a similar black electric bicycle from prior surveillance.  The backpack included a black zippered pouch containing capsules of a gray powdery substance, a black cylinder

2

container with suspected marijuana, and a clear plastic bag containing suspected crack cocaine. Officers also located a black semi-automatic .380 caliber Keltec pistol with one round in the chamber and one round in the magazine of the firearm inside the same backpack. Nothing else was in the backpack other than a dish cloth. KNOWLES' Florida identification card was on the table located right next to the electric bicycle. The table had a wallet inside the drawer with a card on it containing KNOWLES' name. A body camera shows the firearm in the backpack.

5. Upon locating the items, law enforcement followed up with KNOWLES, questioning whether the electric bicycle and backpack belonged to him. KNOWLES nodded his head yes to the questions. KNOWLES further admitted the narcotics and firearm in the backpack belonged to him. KNOWLES stated he got the firearm from a junkie for some dope, and he possesses it because "it is a cold world." He stated he is not going around shooting people; he is just trying to make a living.

6. Law enforcement then continued their search of the residence, including a search of the front porch. In a black box, officers located clear bags containing a tan powdery substance, a brown powdery substance, a white powdery substance, and a blue powdery substance. Further, officers collected numerous, empty clear capsules, syringes, and clear bags. The suspected heroin and fentanyl field tested positive for fentanyl.

7. KNOWLES was then brought to the DBPD holding facility. KNOWLES admitted the black box was his, and when asked about the gray and blue powders, he stated they were "cut." Further, KNOWLES consented to providing a DNA sample.

8. Law enforcement received the DNA results from DNA Labs International, which concluded that KNOWLES's DNA is on the firearm. Specifically, the DNA profile obtained from the sight swabs indicated a mixture of at least two individuals with at least one male

contributor. KNOWLES could not be ruled out as a possible contributor to the DNA profile. It is "approximately 1.3 billion times more probable if the sample originated from Derek Lee Knowles and one unknown person than if it originated from two unknown persons. This analysis provides very strong support for the proposition that Derek Lee Knowles is a contributor . . . ." Further, the profile obtained from the grip swabs is "approximately 8.7 quadrillion times more probable if the sample originated from Derek Lee Knowles and two unknown persons than if it originated from three unknown persons." The DNA profile obtained from the trigger swabs "is approximately 300 million times more probable if the sample originated from Derek Lee Knowles and three unknown persons . . . ."

9. Additionally, the Palm Beach County Sheriff's Office Forensic Sciences and Technology Facility ("PBSO Lab") tested the three bags containing the tan, brown, and blue powder substances. The tan powder was confirmed to be N,N-DIMETHYLPENTYLONE (Substituted Cathinone), with a net weight of 28.2580 grams. The PBSO Lab concluded that the brown powder was caffeine (tentative). Finally, the PBSO Lab concluded that the bag containing the blue stain, was also N,N-DIMETHYLPENTYLONE with a net weight of 3.1054 grams.

10. The Drug Enforcement Administration tested 12 capsules found in the backpack. Fentanyl was identified in 9 capsules and N, N-Dimethylpentylone was also identified in 4 of the

9 capsules.   The net weight of the capsules was .82 grams.

11.   All events having occurred in the Southern District of Florida.

MARKENY LAPOINTE
UNITED STATES ATTORNEY

Date: 9/20/23                     By: _____
                                      SHANNON O'SHEA DARSCH
                                      ASSISTANT UNITED STATES ATTORNEY

Date: 9\8\23                      By: _____
                                      JAN SMITH
                                      ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 9\8\23                      By: _____
                                      DEREK LEE KNOWLES
                                      DEFENDANT

5